Good morning, Your Honors. My name is Colin Vandell, and I represent the appellant, Bruce Anderson. In this matter, I'd like to reserve three minutes for rebuttal. Your Honors, the district court erred in affirming the trustee's partial denial of Mr. Anderson's disability retirement benefits claim in four main ways. First, the district court erred in the standard of review that it applied. The standard of – Say that again. The first way that the district court erred was in the standard of review that it applied. It applied an abuse of discretion standard, and it should have applied in light of the trustee's significant procedural violations a de novo standard. The second way in which the district court erred was in affirming the trustee's determination regarding Mr. Anderson's date of disability. According to the trustees, that date was in 2001, but in fact that date was in 1997. The third way in which the district court erred was in affirming the trustee's conclusions regarding the application of Mr. Anderson's quadro, his qualified domestic relations order, to his disability retirement pension. And the fourth way in which the district court erred was if Mr. Anderson was determined to have been disabled in 2001, as opposed to in 1997, the district court then erred in using the 1999 pension plan as opposed to the 1995 pension plan. And the reason for that is the 1999 pension plan violates the anti-cutback rule under ERISA. And I'd like to begin then with the standard of review. The trustees committed very serious procedural violations in this matter that should have changed the standard of review from an abuse of discretion to de novo. This included a failure on appeal to talk with an independent health professional. Well, this case had nothing to do with health professionals at all. It had nothing to do with doctors. It seems to have everything to do with whether the work that he did disqualified him from being disabled. I mean, that wasn't a doctor issue. So you've got a violation that doesn't relate to the case. Your Honor, Mr. Anderson's personal physician did come in and came with the opinion that Mr. Anderson was disabled in 1997. But the decision was based on the fact that he had worked during that time period. That had nothing to do with doctors. You see what I mean? So you're arguing a hypothetical problem, but it doesn't relate to this case at all. So that seems to be totally harmless and irrelevant. The trustees did say that the sole reason for that. The sole reason was what? Was the fact that Mr. Anderson attempted to return to work in 2000. Exactly right. So what does that have to do with calling another doctor? Wait a minute. He didn't attempt. He worked 51 days. That's right. He attempted to return to work. And our argument is that there. No, that's your argument. He worked. He attempted 51 days in a row, right? Successfully. Your Honor, there is a difference here. And I think the first important place to go is the actual. You've got to confront that fact. That's a fact. That's why your client lost. He worked. Your Honor. That's what the trustees said. And that was the sole reason. So doctors, schmachters, they had nothing to do with this case. Your Honor, I do think the first important place to go is to the language of the plan. And once we go to the language of the plan, we can see that Mr. Anderson's attempts to work, or as you say, return to work, did not preclude him from being judged to be disabled. So what does a doctor have to do with it if the sole reason is the fact that he worked? The fact is that Mr. Anderson's doctor did come in and say that he had been disabled since 1997. And they couldn't have cared less because he worked. Why don't you go on to your next point. Okay. So I think that the language of the disability definition under the plan is that the participants returned to employment in the industry shall be considered proof by the trustees that he is no longer disabled. Now, return to employment there, it doesn't say how long that return to employment needs to be. Would that be part of one day Mr. Anderson trying to drive a commercial truck? It doesn't say that. It also says that this shall be considered proof. Does that say this shall be considered definitive proof? It does not. So what you have to then do in light of that definition there is go to the case law and see how disability definitions in other cases have been interpreted. Because as Your Honor said, the trustees' determination here was made solely because Mr. Anderson attempted to work during that period in 2001. So are you off the procedural violations now? Now we're moving off. So right now we're assuming that the standard of review would be abuse of discretion. And even if there was an abuse of discretion standard of review, the trustees did abuse their discretion in reaching the 2001 disability date as opposed to the 1997 disability date. And that's because they have said that the sole reason for them coming up with the 2001 disability date was because Mr. Anderson attempted to work then or return to work, as Your Honor said. And the case law is very clear that simply being on a payroll at a company does not preclude someone from being disabled. The language is very clear in the case. That's a decision for them if we're using an abuse of discretion standard. Just because they have a certain amount of discretion does not mean that they can abuse it. Their determinations have to be reasonable in light of the definition in the plan and in light of the case law. And under their reading, if Mr. Anderson simply attempted to work for a half of a day, he would have been precluded from being disabled. Yeah, but, I mean, here we go again on the law school scenario. That's not what happened. He didn't work for a half a day. Your Honor, he attempted to work for 51 days. He drove a truck. This was a different line of work than he was engaged in in 1997 when he injured his knee. And I think it's also very important to mention here that during this time, the evidence is uncontradicted that he was in significant pain, and at the end of his 51 days of employment, he actually took a Department of Transportation driving test, and he failed it. In fact, during this time, he was driving a commercial truck and did not have a commercial driver's license. And the evidence in the record is uncontradicted that he was not asked for a commercial driver's license during this time. As he spoke about in his deposition, he then found out that he needed to have a commercial driver's license. He went into the Department of Transportation, and he failed that driving test then and there. So in light of that, he was not qualified to work during that time, and that makes the case law regarding disability definitions even more important, because you have this case law that's very clear that says the mere fact that someone is on a payroll does not preclude them from being disabled. So here, yes, you have him on a payroll for 51 days. You have him on the payroll for one-seventh of a year. But other than that, the record is uncontradicted that since 1997, Mr. Anderson has not worked. And the record is also uncontradicted that in 2001, he took this driving test, failed it, and has not worked since. What's a pension benefit credit? A pension benefit credit? He accumulates a certain number depending on the amount of time that he's working. I believe there might be about one credit per year that he would accumulate. And he earned credits for the time you say he wasn't working? For the time he was due credits under the old pension plan. And also if he had been disabled. The district court says he worked 15 days as a truck driver for B&M, 36 days as a truck driver for Hartman. He earned $26 per hour. He also earned .3 pension benefit credits under the plan as a result of this. Correct, Your Honor. That's what they gave to him. And as we discussed. Is that true? Did they give him? Is that true? He not only got paid, but he earned pension benefit credits under the plan? The trustees awarded him pension plan credits under the plan. Of course, that is part of their argument now of saying, well, he couldn't have been disabled in 1997 because we awarded him benefit credits in 2001. So you're upset that they awarded him credits? You're trying to have it both ways. No, not at all, Your Honor. We're saying that Mr. Anderson was disabled back in 1997. And if he was disabled in 1997, it is undisputed that the pension plan should have been applied in a way so that he should have obtained benefit credits from the time of his disability all the way through his normal retirement date. Did he perform any work for compensation or benefit during the period of time? During, in 2001 you're talking about? Did he perform any work for compensation or benefit? He did work during that time. He was employed for those 51 days. And he got compensation? He did receive compensation. That's the problem. That's what the plan says. It says any and all, prevented any and all gainful occupations and for performing any work for compensation or benefit. He performed work for compensation and he got a benefit. Yes, Your Honor. But the mere fact that he was actually working at that time does not preclude him. You look at a case like Mitchell, which came out of the Central District of California, and there the requirement for disability was someone cannot perform regular job functions. Now, the individual there was working every day, came into work, earned money from the payroll, and the court there quoted the Hawkins Court out of the Second Circuit and said that the fact that a person is, quote, unquote, still working does not settle whether that person is able to perform regular job functions. And whereas here you do not have the plan saying that someone's returned to work. That wasn't the standard in the contract, regular job function. It wasn't any work at all. And you're citing this to a Central District case? Do you think that that is binding authority on this when the Central District relied on the Second District? It is not, Your Honor. But at the same time, these other district courts and these other circuits that have decided this issue have said and made the very clear argument that the mere fact of working does not preclude someone. Now, you look at the language here. And the language here does not say someone is absolutely precluded from working for half a day at work or they won't be judged to be disabled anymore. You know, the trustees would have had discretion if it was a half a day and the guy fell apart to say, well, we're not going to count that. This was within their capacity and their discretion to decide. They could have ruled in your favor, I suppose, but they didn't. And they pointed to this plan language. And it seems pretty clear to me that the language bars your argument. He worked for compensation and benefit during that period of time. Yes, Your Honor. And I think that because of that, I think it's important also to move on to the next point, the anti-cutback point, which would mean that even if Mr. Anderson was disabled in 2001, the 1990 pension plan, 1999 pension plan constituted an impermissible cutback of his benefits. And I believe that's the case that we were asked to be prepared to discuss. Rombach versus Nassely, right. Exactly, Your Honor. And in that case, you really had the issue of whether a pension plan is or whether a benefits plan is a welfare benefits plan or whether it's a retirement plan. And in that decision, they said that the disability benefits were a welfare plan. Here, that is not the case. And I think the first place that we really have to go is the Section 1002 definitions for welfare benefits plans and retirement plans, because that was one of the things that that court did not really focus on. They looked at 1002, I believe it was 1, where they were talking about the welfare benefits plan. But the important provision to look at here is 1002-2A, which is the definition for employee pension benefit plan. And there they say that a plan is an employee pension benefit plan, which is protected by the anti-cutback rule to the extent that by its express terms or as a result of surrounding circumstances, such plan, fund, or program provides retirement income to employees. And that's really the key here, whether it provides retirement income to employees. And because of that, we have to look at the actual terms of the plan that we have here. Multiple times, the plan is referred to as a disability retirement pension. The actual language in the plan refers to it as a disability retirement pension. And I think it's also very important to note that the trustees have represented to Mr. Anderson and to the district court multiple times during this litigation that this is a retirement plan, that it's not a welfare plan. But he's claiming it on the basis of disability, which means that it's a welfare plan, not a retirement plan. Incorrect, Your Honor. I think that one place that's very important to start here is in the summary plan description, the actual plan itself. You can refer to the summary plan description on, I believe it is, it's ER 106. And it says right there, this pension fund does not presently provide health and welfare benefits for retirees. It can't be any more clear than that. It goes on to say, instead, the Suburban Teamsters of Northern Illinois Welfare Fund does maintain a retiree welfare plan. So there you have it, in very clear language, them saying that this is not a welfare benefits plan, but it's instead a retirement plan. I'll save most of my time for later, but I should point out two other points. You also have in the trustees' third revised statement of material facts at ER 652. They say, although the pension plan refers to age retirement benefits and disability retirement benefits, and here's the important part, these are merely different forms of payment of the participant's pension. A participant who is eligible for a disability pension cannot receive age retirement benefits in addition to disability retirement benefits. And I'll reserve the remainder of my time. Thank you. Good morning, Your Honor. May it please the Court, Barry Collins for the Suburban Teamsters of Northern Illinois Pension Fund, defendant Napoli in this case. This case is about standards, and that is completely unremarkable because every case is about standards. That's what lawyers and judges do. They identify the proper standard in the law. They apply it to the situation. There's a standard for this court's review of the district court. I won't talk about that because it's in the briefs and there's no dispute about it. The district court applied a standard in reviewing the decision of the Board of Trustees. The district court applied the abuse of discretion standard. It's important. I'll come back to that. But I think the most fundamental, the most basic standard in this case is the standard in the plan for the definition of disability. And that definition, which has been quoted already, but it's that a person suffers from a physical or mental condition that will continue for a long and indeterminate period of time, prevent him from pursuing any and all gainful occupations and performing any work for compensation or benefit. It is a very high standard. It does not permit any type of employment, unfortunately. The plaintiff is stuck with that. The Board of Trustees is stuck with that. That is the rule in the plan. How do you meet the argument that whatever the plan says, the document which was given to the participants, the SPD, had a different standard in it, an easier-to-meet standard? Your Honor, I respectfully submit that there is no material difference. A summary plan description document is intended to be written in plain language compared to a plan document that is in legal language. I submit that there is no difference between the essence of the two definitions. All right. Now, the reason I started with the standard of disability in the plan is because that standard informs so many other determinations in this case. One of those determinations has to do with the alleged procedural shortcomings. Do you see any difference between saying you're not disabled if you can pursue any and all gainful occupations and saying you're not disabled unless you are likely to prevent you from working in the future? Your Honor, that is a partial quotation. The language of the summary plan description is a bit longer than that. It says working in any job for at least six months and is likely to prevent you from working in the foreseeable future. You don't think that's easier to meet than the plan standard? Your Honor, I do not. I think prevent you from working is a commonsensical statement that prevent the person from working in the future. Now you're short-circuiting the language. It says likely. Likely. Likely to prevent. It doesn't say that prevent. It says likely to prevent. That's pretty amorphous compared to the way the plan itself reads. So you try to brush it off as a difference in style, but I don't think it strikes me as style. It seems to provide a different standard. You said that's what this case is all about, so I want to know what standard we're using. I see a summary plan description that has apparently one standard and a plan that has another standard. And doesn't the law ordinarily require that the summary plan description trumps the plan if there's a difference between the two? The law does so provide. I should add that the purpose of that principle is that the summary plan description is what is in the hands of the participants. In this case, the plaintiff, who was intelligent, articulate, and astute, had the plan and was quoting it, and you can see that from his correspondence. The plaintiff had the plan, had the plan language. Well, he also complained in the district court that the summary plan description was different and that he was entitled as a matter of law to the benefit of the summary plan description. And then the district court never bothered to address that. Then he came back with a motion for a new trial and said, wait a minute, you didn't address all the issues. Wasn't that one of the issues? That was one of his manifold claims. Did the district court address it? I do not recall the district court addressing it. I do, and the district court didn't address it. And then he came back with a motion for a new trial saying, hey, what happened to all the claims? He didn't specify the plan description, but he said you didn't get them all. The other curiosity is, though, it doesn't appear on the other side until the reply briefs. And ordinarily, those kinds of arguments are forfeited if they don't come up until the reply brief. Thank you. That's, Your Honor, all I can say is that we, because of the absence of this district court addressing it, we took it that the district court looked at it the same way we did, that they were substantially the same, and reasonable minds can differ on that. What do we do with the portion of the SPD which says if there is a conflict between the plan and the handout, the plan rules? Do we have any law saying that where that is in the handout, that is binding on the petitioner? Does it make any difference in the case where the petitioner has negotiated for the plan or where a union has negotiated for the plan? Your Honor, the language that's in the summary plan description that says in case of conflict, the plan controls, that language has been in the summary plan description from the beginning of time. The cases in the Ninth Circuit that say that the cases allowing the handout to control over any inconsistencies that it has with the plan don't apply, where the handout has a paragraph saying if there are inconsistencies, the plan applies. I wasn't unable to find any Ninth Circuit cases. I cannot recall such a case. I think it would be a logical conclusion. I have not heard it stated in the Ninth Circuit. Do we have any circuit cases from other circuits handling this particular problem? I am not familiar with them. It was not an issue. If this case is all about standards, that's where you started, and that's really what we should be concerned about, standards. There are two possible different standards. Maybe you're right. Maybe it's the same thing. It just is a question of style, as you called it. But if there are two standards, that might make a difference. The district court didn't answer that. Should we just send it back to the district court and tell the district court, hey, cope with this difference between the summary plan description and the plan itself? Maybe there isn't a problem because it says in the summary plan description the plan controls, but maybe it is. There are some cases that suggest that there is. Then there's the overriding question that this is the result of a collective bargaining agreement, which hasn't been raised either. But why shouldn't we send it back and ask the district court to take a look at the summary plan description and figure that one out? One reason is that I believe that under the summary plan description's language, even if different in nuance, that the plaintiff doesn't meet that standard either or didn't meet that standard until he stopped working in 2001. Well, how do we know if it wasn't applied by the district court? Maybe there's a genuine issue of material fact on that. The issue of the Board of Trustees made the determination, as Your Honor has noted, based on the fact of employment. I think this Court could fairly read that summary plan description to preclude a person who works 51 days. The fact that he worked 51 days seems to sink him under the plan, but not necessarily under the likely to prevent you from working in the foreseeable future. Maybe 51 days doesn't indicate that he's going to be able to work for the rest of his work life. Your Honor, you have correctly noted that there are two standards. The two standards of total and permanent disability are totality and permanence, and the totality is currently unable to perform any job, and permanence with an expectation that that inability will continue for the foreseeable future. That's where the likely comes in. I think the likely goes to the permanence. It doesn't go to the totality. And any judgment or any determination based on the permanence of disability always has to be somewhat speculative because people unexpectedly get better. You've given us several standards to worry about. All right, go ahead. Okay. The back on the standards, the plaintiff's counsel addressed, I was glad to see him address the plan. Unfortunately, he selected the wrong section of the plan to quote. The section that the plaintiff was quoting to this court a few minutes ago was the section of the plan that says, if you are disabled, you will cease to be disabled if X occurs. The Board of Trustees never considered, never looked at, never applied that section because it didn't apply. The plaintiff has made the assumption that he was disabled back in 1997 because Social Security said so, and that his return to employment was interpreted by the Board of Trustees as a return to employment that terminated his disability, and that's simply incorrect. The application of the standard occurred, I mean, the position of the Board of Trustees, that he never met the standard until he finally stopped working, that his disability or his impairment, or however you want to characterize it, from 1996 through 2001 wasn't total, wasn't permanent, and that having been previously disabled, there was no return to employment, and the reliance on that part of the plan is not helpful. The other thing I think we need to discuss is the Rombach case. The Rombach case was, in my opinion, on all fours with this case. The Rombach case, the Nestle plan had a disability pension structure that gave the person credit for all of the years he could have worked from the time he became disabled, and they took that away in 2000, and thereafter gave the person a pension based on the credit he had actually earned and actually worked. Suburban Teamsters did exactly the same thing in 2008. Their old plan gave the person credit for all of the years he could have worked in the future, and may of 1998 they changed that. In reaching its decision, the Rombach, the Second Circuit, really went through three steps. The first step is to say that Section 204G, the anti-cutback rule, does not apply to welfare benefits. Second, they decided that a disability benefit is not a welfare, is a welfare benefit, is not a pension benefit. And the third, and this is the important part of the case, in a triumph of reality over artificiality or substance over form, the court said that a disability benefit that is inside a pension plan, and maybe they used the word retirement, and maybe they call it a pension plan, but a disability benefit within a pension plan is still a disability benefit, is still a welfare benefit, is still exempt from the anti-cutback rule. And I submit to the court that there has been no case cited by the plaintiff that disability benefits are subject to the anti-cutback rule. Every case that they've cited has been a non-disability case. Finally, and this, I wasn't going to dwell on the factual issues, because I think they're ultimately unimportant, but when my colleague here has brought a non-fact before this Court and argued it, I have to respond. He said that it's uncontradicted in the record that the plaintiff took a DOT examination and failed it. Your Honor, that's not only is it not uncontradicted, it's not in the record. There is an ambiguous reference in the plaintiff's deposition to the fact that he didn't think he could pass this test, and elsewhere in the record there was a letter from the plaintiff where he said, I didn't think I could pass it. I don't, personally, I don't think that means he took it and failed it. I think that's something that the plaintiff's counsel has come to that conclusion, unsupported by the record, and for the reasons we stated in our brief, not appropriate to argue before this Court, because those facts never were discussed by the district court. In conclusion, let me ask the Court to affirm the well-reasoned judgment of the district court. Thank you. Your Honors, I think it's important to focus here on the emphasis that the opposing counsel has placed on the permanence and totality of the disability requirement that you have here under this pension plan, and this refers us back to Rombach, because this total and permanent disability means that there is no foreseeable hope of someone working again. Therefore, the trustees have said multiple times that this is a retirement pension. I read some of these examples to you before, but there's another that the trustees actually directly made to Mr. Anderson in this case. It was in their affidavit to the district court. It was ER 814-16, and in that they said the trust agreement provides that the assets of the trust are to be applied only to the payment of retirement benefits and to defray the expenses of the trust. The language cannot be more clear than that, and that is the difference from Rombach here. In Rombach, you had many more indications that these were welfare benefits that would be provided. Here you have the trustees by their own words saying that these are retirement and only retirement benefits, and that is the difference here. The other side says when you cut through all of that to the reality, it's still a disability benefit. It is not true. As the trustees have said, Mr. Anderson is not at the age of 60 then going to be receiving age retirement benefits as well. Instead, these benefits that he received before his time of disability that would have been accrued for his post-normal retirement age disability, as the trustees have said, he's not getting that anymore. He is only getting this disability retirement pension. So it's not like this is some sort of welfare plan that then is going to maybe change into a permanent retirement plan. It is not that. This is a disability retirement pension.
judges: Trott, Bea, Conlon